IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

JOHNNIE L. BROCK, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV508-053
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge J. Richard Stables ("the ALJ" or "ALJ Stables") denying his claim for Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award of benefits in Plaintiff's favor, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for Supplemental Security Income on June 6, 2006, alleging that he became disabled on June 1, 2006[1], due to diabetes with neuropathy, emphysema, and high blood pressure. (Tr. at 7; Pl.'s Br., p. 1). After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On February 11, 2008, ALJ Stables conducted a teleconference hearing at which Plaintiff, represented by counsel, appeared and testified. DeeDee Locascio, a

---

[1] Plaintiff originally alleged his disability began on December 31, 2002, but amended his alleged onset date to June 1, 2006, at the hearing. (Tr. at 7).

vocational expert, also appeared and testified at this hearing. ALJ Stables found that Plaintiff was not disabled within the meaning of the Act. (Id.). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 49).

Plaintiff, born on January 1, 1957, was fifty one (51) years old when ALJ Stables issued his decision. He has a limited education. (Tr. at 20). Plaintiff's past relevant work experience includes employment in the salvage business. (Tr. at 145).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal

one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity since June 1, 2006, his amended onset date. (Tr. at 9). At Step Two, the ALJ determined that Plaintiff had insulin dependent diabetes mellitus with peripheral neuropathy, a diabetic ulcer on his right toe, chronic obstructive pulmonary disease, and a history of alcohol abuse, conditions considered "severe" under the Regulations. ALJ Stables noted that Plaintiff was diagnosed with non-severe impairments of generalized osteoarthritis and multiple arthralgias, but he did not allege these impairments, nor was there anything alleged in his written statements or in his testimony about these impairments. However, the ALJ also determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 10). The ALJ found that Plaintiff had the residual functional capacity to perform light work with the following limitations: alternate sitting and standing in 30 to 45 minute intervals; occasional kneeling, squatting, and crawling; no climbing of ladders or scaffolds and balancing; frequent bi-lateral foot/leg controls, but not constantly; avoid working at unprotected heights and moving machinery; and avoid concentrated exposure to cold temperature extremes, chemicals,

dust, fumes, and vibration. (Id.). At the next step, ALJ Stables noted Plaintiff was unable to perform his past relevant work as a salvage laborer, a medium, unskilled job. (Tr. at 13). ALJ Stables found that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could make a successful adjustment to other work and could perform the following job which existed in significant numbers in the national economy: cashier II, an unskilled, light job. (Tr. at 16).

## ISSUES PRESENTED

Plaintiff asserts there is not sufficient evidence to support the ALJ's finding that he can stand long enough during a workday to perform the cashier's job. Plaintiff also asserts the ALJ improperly rejected evidence from his treating physicians and a consultative examiner.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence

which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

Plaintiff contends that the only job the ALJ identified that he could perform was that of a cashier II, which requires the ability to stand and walk six hours in an eight-hour workday. However, Plaintiff contends that both the treating and consultative physicians opined that he cannot stand for a prolonged period of time and/or cannot stand or walk for at least two (2) hours in an eight-hour work day. Plaintiff alleges that ALJ Stables did not address the opinion of Dr. Stanley Wallace, who stated on at least two (2) occasions that Plaintiff would have serious difficulty standing for a prolonged period of time and that Plaintiff has limitations of his hands. Plaintiff asserts that Dr. Wallace's opinion as to Plaintiff's ability to stand corroborate the findings of Drs. Lisa Panthel and David Murphy. Plaintiff also asserts that the ALJ did not give any valid reason for discounting the opinions of his treating and consultative physicians, and, as a result, these opinions should be accepted as a matter of law.

Defendant asserts that Dr. Panthel's treatment relationship with Plaintiff did not clearly rise to the level of "treating physician", nor did the ALJ designate her as such. Defendant also asserts that, even if Dr. Panthel could be characterized as a treating

physician, her opinions would not be entitled to controlling weight because they are unsupported by other objective medical findings, conflict with other evidence of record, and her opinions as to Plaintiff's limitations are summary in nature. Defendant contends that Dr. Wallace repeatedly failed to find evidence of motor neuropathy, which would account for Dr. Panthel's suggested inability to stand and walk. Defendant alleges that the ALJ was entitled to resolve conflicting medical evidence. Defendant also alleges that Plaintiff has misconstrued the ALJ's finding as to his residual functional capacity since ALJ Stables determined that Plaintiff needed to alternate between sitting and standing at 30 to 45 minute intervals. Defendant further alleges that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's determination that Plaintiff could perform work in the national economy.

Plaintiff counters that the total combined standing required for a cashier job exceeds the limits Dr. Wallace found Plaintiff to have during the consultative examination. Plaintiff asserts that the Defendant's position that the findings of Drs. Panthel and Murphy do not provide a longitudinal picture of Plaintiff's impairments and functioning ignores the fact that Plaintiff was only able to see these doctors when he had the money to do so. Plaintiff contends that it is not reasonable to give the opinion of Dr. William Kelso, a non-examining, reviewing doctor, more weight than that of doctors who actually examined Plaintiff and made objective findings based on those examinations. Plaintiff also contends that Dr. Kelso did not have all of Plaintiff's medical records before him when he assessed Plaintiff's residual functional capacity. Plaintiff also contends that ALJ Stables did not review all of the medical evidence in this case.

Defendant responds that a residual functional capacity for a range of light work may apply to a claimant who cannot stand for six hours out of an eight-hour workday, as the applicable Regulation "states that light work may 'involve sitting most of the time with some pushing and pulling of arm or leg controls.'" (Doc. No. 19, p. 1) (quoting 20 C.F.R. § 416.967(b)). Defendant avers that the ALJ accounted for the inability to stand for a prolonged period by including the need to alternate positions between sitting and standing every 30 to 45 minutes. Defendant alleges that the ALJ properly relied on the vocational expert's testimony in response to the hypothetical, which matched the ALJ's residual functional capacity findings.

The "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985). However, "[a]lthough the opinion of a claimant's examining physician is accorded substantial weight, it is not necessarily dispositive on the issue of disability." Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987). The opinions from treating sources "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241.

Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th

Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

ALJ Stables determined that Plaintiff retained the residual functional capacity to perform work at the light exertional level with several limitations, as noted above. In reaching this determination, ALJ Stables stated that he gave great weight to the opinion of the State agency physician, whose opinion the ALJ found to be supported by and consistent with the medical evidence of record. (Tr. at 10, 251-58). The ALJ noted that Plaintiff had an active diabetic ulcer on his right foot in June 2006 and that Dr. Wallace noted that Plaintiff had a right toe ulcer in August 2006; however, the ALJ noted Plaintiff's medical records did not show that the ulceration lasted 12 consecutive months. ALJ Stables specifically pointed to a January 2008 record from Dr. Murphy, and this record did not indicate Plaintiff was suffering from any ulceration.[2] The ALJ observed that Plaintiff continued to smoke, despite having chronic obstructive pulmonary disease. The ALJ stated that he gave "some weight" to Dr. Wallace's report that Plaintiff had "significant difficulty" getting on and off the examination table, standing on his heels and toes, squatting, and hopping due to diabetic peripheral neuropathy.

---

[2] The undersigned notes that Exhibit 16F, to which the ALJ attributed to Dr. Murphy, was actually from Dr. Lisa Panthel. While this medical record does not reveal that Plaintiff was suffering from any diabetic ulcers on January 16, 2008, it does reveal Plaintiff had hyperkeratotic lesions debrided from his right foot. (Tr. at 283). However, there does not appear to be evidence of record that Plaintiff suffered from ulceration of his feet for a continual 12 month period except for Dr. Roberto Garcia's passing comment on August 30, 2006, that "[t]here have been ulcers related to diabetes on the right foot for the past two years." (Tr. at 263). Additionally, Dr. Panthel noted on December 19, 2007, that Plaintiff's right foot ulcerations were well healed, and there were no signs of infection noted. (Tr. at 278).

(Tr. at 11). ALJ Stables noted Dr. Panthel's opinion that Plaintiff could not stand or walk at least two (2) hours in an eight-hour workday and needed to elevate his legs throughout the day. The ALJ rejected this opinion because he did not find that the medical evidence proved that Plaintiff had an impairment or impairments which necessitated these limitations, and he specifically noted that Plaintiff had sensory diabetic peripheral neuropathy, not motor neuropathy, and the Doppler arterial study showed that Plaintiff's bilateral lower extremities were normal. The ALJ also noted that Dr. Panthel did not submit any office records or objective evidence to corroborate her opinion.

ALJ Stables also stated that he considered Plaintiff's symptoms and the extent to which his symptoms could reasonably be accepted as consistent with the evidence of record. In so doing, the ALJ determined whether Plaintiff had any medically determinable impairments which could reasonably be expected to produce Plaintiff's pain and other symptoms. The ALJ then evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the limiting extent on Plaintiff's ability to perform basic work activities. To make this evaluation, ALJ Stables noted that he had to make credibility findings when Plaintiff's statements were not supported by objective evidence. ALJ Stables offered several instances which undermined Plaintiff's credibility.

For instance, ALJ Stables stated that Plaintiff alleged he had significant problems standing and walking. However, ALJ Stables also stated that, despite having diabetic peripheral neuropathy, the consultative examiner, Dr. Wallace, did not report that Plaintiff had any difficulty with standing on his feet, except for heel and toe standing, or

AO 72A
(Rev. 8/82)

9

walking. (Tr. at 12). The ALJ noted that Plaintiff testified he could stand maybe 10 minutes due to the pain in his feet, but health center records dated November 2007 revealed Plaintiff did not have pain in his ankles or feet. The ALJ also noted Plaintiff's allegation that he did not have any feeling his hands. However, the ALJ observed, an examination by Dr. Wallace in August 2006 revealed that Plaintiff could make a full fist without difficulty and there were no abnormal findings with his hands on musculoskeletal examinations. The ALJ also observed that Plaintiff collects eggs from his six (6) chickens, which demonstrated Plaintiff retained "quite adequate hand and finger function." (Id.) ALJ Stables stated Plaintiff alleged that he had shortness of breath and said that he cut back to smoking 4 to 6 cigarettes a day about six (6) months prior to the ALJ's decision. ALJ Stables also stated that, less than a month before the hearing, Plaintiff admitted to Dr. Panthel he smokes 4 packs of cigarettes a day. (Id.; Tr. at 283). ALJ Stables observed that Plaintiff still smoked, despite having chronic obstructive pulmonary disease. The ALJ noted that Plaintiff's FEV1 measured 109% of normal, which did not suggest significant shortness of breath. The ALJ also noted that Plaintiff testified that he stopped drinking 9 to 10 months before the hearing, which would have been June or July 2007, yet he told his counsel that he stopped drinking around September 2006. Yet again, the ALJ noted, Plaintiff told Dr. Garcia in September 2007 that he used to be an alcoholic but stopped drinking about two (2) weeks before that appointment. (Tr. at 12). ALJ Stables observed Plaintiff testified that he completed the 8th grade, but stated in the record that he completed the 9th grade in regular classes. (Tr. at 148). ALJ Stables commented that Plaintiff reported he completed reports, had six employees, could count change, and used a checkbook and money orders in his

salvage business, which revealed Plaintiff was not as limited as he claimed during his testimony and was contrary to Plaintiff's testimony that he did not do much paperwork in his business. Finally, the ALJ noted that Plaintiff alleged that he last worked on December 31, 1998, but he testified that he last worked in 2003 or 2004.

ALJ Stables then looked to the vocational expert's testimony. The vocational expert testified that, given the hypothetical person with Plaintiff's age, education, work experience, and the same residual functional capacity as determined by the ALJ, the hypothetical person could perform the light exertional job of cashier II. The ALJ noted that <u>The Dictionary of Occupational Titles</u> ("DOT") did not include a sit/stand option, and, accordingly, the vocational expert's testimony was not consistent with the DOT in that regard. ALJ Stables observed that the vocational expert testified on cross-examination that all jobs would be precluded for a person with limitations of occasional reaching, handling, and fingering and the need to elevate his legs during the day. However, the ALJ also observed the evidence of record did not prove that Plaintiff had these limitations.

It is evident that ALJ Stables reviewed the entire record, including Plaintiff's Function Reports and communications with his attorney, as well as Plaintiff's medical records from Drs. Garcia, Panthel, and Wallace, to determine that Plaintiff was not disabled within the meaning of the Act. To the extent ALJ Stables discounted the opinion of Dr. Panthel, he noted that her opinion was not supported by the other evidence of record and implicitly stated that her opinion was conclusory. An ALJ is permitted to discount the opinion of a treating source for these reasons. <u>Phillips</u>, 357 F.3d at 1241. In addition, the ALJ gave some weight to Dr. Wallace's findings. (Tr. at

11). Further, the ALJ only had to include in his hypothetical presented to the vocational expert those limitations he found credible, which the ALJ did. Plaintiff's allegations of error are without merit, and he is not entitled to his requested relief.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 24th day of August, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE